IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANTONIO D. BANKS,<br>　　　　Plaintiff, | *<br><br>* |
| v. | CIVIL ACTION NO. DKC-09-589 |
| | * |
| OFFICER J. BROADWATER, et al,<br>　　　　Defendants. | *<br>****** |

## **MEMORANDUM OPINION**

On March 6, 2009, the court received Plaintiff Antonio D. Banks' civil rights complaint seeking compensatory damages and unspecified injunctive relief filed pursuant to 42 U.S.C. § 1983. Banks alleges he was subjected to excessive force, denied medical care, and placed in a holding cell which was unsanitary. Paper No. 1.

Defendants Sergeant Robert Huff, Officer William Logsdon, Officer Jerry Broadwater, and Officer Russell D. Gover, Jr., have filed a Motion to Dismiss, or in the Alternative for Summary Judgment. Paper No. 27. Plaintiff has filed oppositions.[1] Paper Nos. 32-38, 40, 44 and 48. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, the dispositive motion filed by Defendants, treated as a motion for summary judgment, will be denied and counsel shall be appointed for Plaintiff.

**Background**

Banks alleges that on December 23, 2007, at approximately 5:00 p.m., while housed on disciplinary segregation at the Western Correctional Institution, Correctional Officer Broadwater came to Plaintiff's cell, handcuffed him and took him to the property room. Plaintiff states that he

---

[1] Plaintiff has filed a Motion for Order Compelling Discovery. Paper No. 51. Plaintiff indicates that he has been unable to receive copies of his medical records and seeks the court's assistance in obtaining the documents. Subsequently, Plaintiff notified the court that he did receive the documents he was seeking. Paper No. 52. As such, the motion shall be denied as moot.

was removed from his cell because he passed another inmate cookies from his meal tray and Broadwater wanted to speak with Plaintiff about his actions. Plaintiff states that after they entered the property room, Broadwater struck Plaintiff across his chin with the back of his right hand and choked Plaintiff for twenty seconds, saying, "I'm the one in charge here you understand." Plaintiff states this occurred in front of Defendants Huff and Gover. Plaintiff was then returned to his cell.

A few minutes later, inmate workers began to collect the meal trays. Plaintiff states he put his tray out of the slot onto the floor and Broadwater pulled Plaintiff's hand into the slot and intentionally slammed the feed slot onto Plaintiff's hand. Plaintiff states his fingers were bleeding and his fingernail ripped halfway off. He states he asked for immediate medical attention but Defendants refused to provide Plaintiff treatment during that shift. Plaintiff states he was not provided medical care until approximately eight hours later.

After he was taken to the medical unit, Plaintiff states he was placed into an isolation cell which lacked a mattress, bed, or bunk. He states the cell's window was held open by a rock placed from the outside so that he could not close the window. He further states that a sound-proof bubble was placed around the cell and the cell was constantly illuminated. Paper No. 1.

Broadwater avers that on December 23, 2007, he met with Plaintiff in the lobby where Plaintiff asked to be moved to another cell. Plaintiff did not offer a valid reason for requesting a change of cell and was returned to his cell without incident. Paper No. 27, Ex. A. Broadwater further avers that after Plaintiff was returned to his cell, he placed his hand in the feed slot of his door. Broadwater asked him to pull his hand from the slot. Plaintiff refused and Broadwater physically removed Plaintiff's hand and started to shut the slot. Plaintiff then placed his hand back in the slot and the slot door pinched Plaintiff's finger. Broadwater states he immediately opened the slot and Plaintiff was offered medical attention by other officers, which he declined. Broadwater

avers that he had no further contact with Plaintiff and at no time did he choke, strike or physically abuse Plaintiff. *Id*.

Officer Huff avers that he did not see Broadwater strike or choke Plaintiff. He further avers he was aware Plaintiff's hand was injured and he offered to take Plaintiff to the medical department but Plaintiff refused. *Id.,* Ex. B.

Officer Gover avers he was stationed in the property room on December 23, 2007, and Plaintiff did not enter the property room while he was on duty. He states he did not see Broadwater strike or choke Plaintiff. He further avers he does not recall the incident which injured Plaintiff's finger and the allegation he denied Plaintiff medical care is false. *Id*., Ex. C.

Officer Logsdon avers he is not aware of any injury sustained by Plaintiff and he did not deny Plaintiff medical treatment on December 23, 2007. *Id.,* Ex. D.

Plaintiff's medical records reflect that he was evaluated at 12:25 a.m. on December 24, 2007, due to complaint of a finger injury. It was noted that a small area was avulsed around the nail of his right hand ring finger, swelling was noted, and his third and fifth fingernails were slightly discolored. A good range of motion was noted in all fingers and no crepitus or deformity was observed. The area was cleaned by soaking. Bacitracin and dressing was placed on the hand and Plaintiff was provided Motrin for pain. Paper No. 27, Ex. E, p. 4. Pictures of Plaintiff's face and hand were taken.[2]

On December 27, 2007, an x-ray of Plaintiff's finger was ordered. Plaintiff was advised to soak his finger in Betadine daily, apply Bacitracin and a bandaid and follow up in one week. *Id*. p. 7.

---

[2] The copies of the photographs provided to the court to evaluate the injury are so dark they are useless. *Id*.p. 5

*Id.*, p. 6-7. The radiology report found no acute fracture or dislocation of Plaintiff's fourth finger. An old healed fracture was noted on the fifth finger. *Id.*, p. 10.

Plaintiff submitted a sick call slip on January 3, 2008, complaining of severe pain in his right fingernail. He was evaluated on January 4, 2008, by Masoud Djahanmir, M.D. The doctor observed a laceration at the root of Plaintiff right finger with a small amount of pus. The wound was cleaned and dressed. Plaintiff was advised not to use a bandaid and was provided sterile gauze, triple antibiotic ointment and tape. He was also prescribed an oral antibiotic. *Id.*, p. 11. Plaintiff was again seen by Dr. Djahanmir on January 11, 2008, for follow-up. Dr. Djahanmir noted that the infection had cleared completely. *Id.*, p. 14.

Plaintiff submitted four sick call slips throughout January of 2008, complaining of severe pain in his right ring finger. His sick call slips noted that Plaintiff had been seen by Dr. Djahanmir on January 11, 2008, and the infection had completely healed. He did not receive further medical care until January 30, 2008, when he was seen by Nurse Trenum due to his continued reports of pain in his finger as well as headaches. *Id.*, p. 15-19. Nurse Trenum observed that Plaintiff's right ring finger was missing half the nail. No redness, swelling or drainage was noted. Plaintiff was provided Motrin for pain management. *Id.*, p. 19.

On March 4, 2008, Plaintiff submitted a sick call slip stating that his right ring fingernail had "finally come off completely." The Nurse wrote a note back to Plaintiff advising him that it would "take 6-12 months for a new nail to regrow. There is nothing to do for it. Let nature take its course." *Id.*, p. 21.

Plaintiff's complaints regarding pain in his finger continued throughout August, 2008. *Id.*, p. 22-28. Plaintiff also complained intermittently of headaches during this time. *Id.*

**Standard of Review**

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

**Collateral Estoppel**

Defendants maintain that Plaintiff is collaterally estopped from bringing the current case because he received a full hearing before a Maryland Administrative Law Judge. "The doctrine of collateral estoppel precludes relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." *Weinberger v. Tucker*, 510 F. 3d 486, 491 (4th Cir. 2007) (citation omitted). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Thus, if a Maryland state court would be precluded from considering Plaintiff's claims based on the decision of the Administrative Law Judge's rejection of his claims, this court is similarly precluded.

Under Maryland law, an administrative agency's decision is given preclusive effect in subsequent judicial proceedings if (1) the agency was acting in a quasi-judicial capacity, (2) the issues presented were actually litigated before the agency, and (3) resolution of the issue was necessary to the agency's decision. *See Neifert v. Department of Environment*, 395 Md. 486 (2006). Collateral estoppel applies to claims raised in Maryland courts "only if (1) the issue presented is identical to the issue previously adjudicated, (2) the party to be estopped was a party in the prior action, and (3) there was a prior final judgment on the merits." *Alston v. Robinson*, 791 f. Supp. 569, 578 (D. Md. 1992) *citing O'Reilly v. County Bd. of Appeals*, 900 F. 2d 789, 791 (4th Cir. 1990); *MPC, Inc. v. Kenny*, 279 Md. 29, 35, 367 A. 2d 486, 490 (1977).

The Inmate Grievance Office ("IGO") within the Department of Public Safety was created to resolve complaints by inmates against officials and employees of the Division of Correction. *See* Md. Ann. Code, Corr. Serv. Art. 10-201 et seq. Plaintiff filed a grievance with the IGO[3] and a hearing was held via teleconference on September 24, 2008, before an Administrative Law Judge ("ALJ") at the Office of Administrative Hearings.[4] Paper No. 27, Ex. F. The ALJ stated the issue presented as: "Did the DOC inflict cruel and unusual punishment upon the Grievant in violation of the Eight Amendment to the United States Constitution by closing a door slot on his finger, placing him in a disciplinary cell and refusing him timely and adequate medical treatment?" *Id*., p. 2. Defendants contend that the ALJ's framing of the issue of the case indicates Plaintiff failed to pursue his claim alleging he was choked and hit by Broadwater. Paper No. 27. Plaintiff states that all his claims were presented in his grievance and during the proceedings. Paper No. 40.

In her opinion, the ALJ noted that Plaintiff testified, as did his witness, inmate Kaimel Glenn. The opinion reflects that Plaintiff submitted a request for witnesses. That request has not been provided to this court. Plaintiff, however, has provided Affidavits to this court from several inmates concerning his claims. It is unclear whether Plaintiff sought to produce these inmates as witnesses at the hearing. More significant, however, is that none of the Defendants named here testified at the hearing.[5] *Id*.

---

[3] The court has not been provided with a copy of the grievance, the exhibits to the proceeding as referenced, or the transcript of the proceedings.

[4] The ALJ noted that she left the record open until October 1, 2008, to permit exhibits introduced at the hearing to be forwarded as the fax machine in the hearing room was not functioning. She further noted that the documents were received and the record closed. *Id.,* p. 2. Later in her opinion she notes that the records forwarded to her were evidence introduced by Plaintiff but when she received them "it was impossible to determine which documents matched the exhibit numbers described on the record." As such, they were all admitted as Grievant's Exhibit 1. I*d*., p. 4.

[5] Rather Steven F. Roach, CCMSII, the DOC's representative at the hearing, and Det. Sgt. Scott Peterson, of the Internal Investigation Unit, testified on behalf of the DOC.

In light of the foregoing and with the incomplete record before it, this court is not prepared to say that Plaintiff "had a full and fair opportunity to litigate" his claims. *Weinberger*, 510 F. 3d at 491.

**Eighth Amendment**

Plaintiff must confront Defendants' summary judgment motion with an affidavit or similar evidence showing that there is a genuine issue for trial.[6] This he has done. There are genuine disputes of material fact concerning the two assaults on Plaintiff—whether the first incident even occurred and the nature of the second incident, i.e. whether Plaintiff caused his injury by thrusting his hand into the feed slot, or whether Defendant Broadwater maliciously held Plaintiff's hand in the slot and slammed the door upon it. Taking Plaintiff's allegations as true, in both instances Broadwater was not acting to restore order but rather was acting maliciously to cause harm.

Likewise, material disputes of fact exist concerning Defendants' refusal to provide Plaintiff medical care for the injury to his finger during the course of their shift. Defendants maintain that they offered medical are to Plaintiff, but he refused. Plaintiff claims that Defendants refused to take

---

[6] The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter,* 501 U.S.294, 297 (1991).

To state an Eighth Amendment claim for excessive force, the court must look to whether the the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986).

To state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of Defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment under the Eighth Amendment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

him to the medical department despite his requests and while he was bleeding in his cell. The parties also dispute the conditions of the isolation room and the reason for placing Plaintiff in the isolation room after he had received medical attention.

Defendants conclude that Plaintiff has failed to show more than de minimis injury. The Supreme Court recently abrogated those cases issued by the Fourth Circuit Court of Appeals which held that more than de minimis injury is necessary to proceed in an Eighth Amendment claim. *See Wilkens v. Gaddy*, 559 U.S. __, Slip Op. No. 08-10914 (Feb. 22, 2010) (holding the core judicial inquiry when a prisoner alleges excessive force is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm). The core inquiry therefore remains disputed based on the materials presented to the court. Whether Defendants acted maliciously and sadistically to cause harm to Plaintiff throughout the evening of December 23, 2007, is a fact disputed by the parties. The issue requires credibility determinations not appropriate for resolution on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Accordingly, summary judgment cannot be granted at this time. The pending dispositive motion shall be denied without prejudice and counsel shall be appointed for Plaintiff. A separate order follows.

Date:  <u>February 26, 2010</u>                 _____/s/_____
                                                  DEBORAH K. CHASANOW
                                                  United States District Judge