IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTONIO DEVIN BANKS              :

   v.                            :   Civil Action No. DKC 09-0589

JERRY BROADWATER, et al.         :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this prisoner civil rights action is a motion to dismiss or, in the alternative, for summary judgment filed by Defendant Melissa Gaughan. (ECF No. 77). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

**I. Background**

   **A. Procedural Background**

On March 6, 2009, the clerk received for filing a *pro se* complaint pursuant to 42 U.S.C. § 1983 submitted by Plaintiff Antonio Banks, an inmate at Western Correctional Institution ("WCI").[1] Plaintiff alleged that correctional officers Jerry Broadwater, Russell Gover, William Logsdon, and Robert Huff used

---

[1] Plaintiff has since been transferred to the Correctional Mental Health Center in Jessup, Maryland. (ECF No. 82, at 3 n.4).

excessive force and denied him medical care in violation of the Eighth Amendment. The defendants responded by moving to dismiss or, alternatively, for summary judgment. That motion was denied. Counsel was appointed for Plaintiff.

On August 18, 2010, Plaintiff's counsel filed a verified amended complaint, naming three additional defendants – two correctional officers, "Lieutenant Yates" and "Officer Stott," and "Medical Technician Phoebe," whose proper name the parties now agree is Melissa Gaughan (hereinafter, "Defendant"). (ECF No. 65).[2] As to each defendant, the amended complaint alleged violations of the Eighth Amendment and Articles 16 and 25 of the Maryland Declaration of Rights.

The correctional officer defendants answered the amended complaint on December 16, 2010, denying all allegations. (ECF No. 72). Defendant responded, on March 7, 2011, by filing the pending motion to dismiss or, in the alternative, for summary judgment. (ECF No. 77).

**B. Factual Background**

The following facts relate to the claims against Defendant Gaughan only. Unless otherwise noted, they are either undisputed or uncontroverted.

---

[2] The clerk will be directed to correct Ms. Gaughan's name on the docket. The defendants other than Ms. Gaughan will be referred to, collectively, as the "correctional officer defendants."

2

On December 23, 2007, at shortly after 5:00 p.m., Officer Broadwater approached Plaintiff's cell and directed him "to pass [his] food tray through the feed-up slot in the cell door." (ECF No. 65 ¶ 39). When Plaintiff complied, the officer "grabbed [] Plaintiff's hands, pulled [them] towards himself, and with great force and violence closed the slot upwards, catching Plaintiff's right hand with the slot door and causing agonizing pain[.]" (*Id.* at ¶ 41). The force of the blow "partially severed one of [] Plaintiff's fingernails" and caused his finger to bleed profusely. (*Id.* at ¶¶ 43, 44). Plaintiff asked Officer Broadwater and Officer Logsdon, who was also present, to "take [him] to the medical department" for treatment, but the officers "walked away from Plaintiff's cell, without responding." (*Id.* at ¶¶ 45, 46). Shortly thereafter, Lieutenant Yates approached Plaintiff's cell. Plaintiff "showed [Lieutenant] Yates his bloody finger" and asked to be "taken to the medical department for treatment." (*Id.* at ¶ 49). Rather than provide assistance, the lieutenant "mock[ed]" Plaintiff and walked away. (*Id.* at ¶ 51).

At approximately 7:30 p.m., Defendant and Officer Stott arrived on Plaintiff's tier "to dispense medications to the prisoners." (*Id.* at ¶ 54). Defendant was a "Certified Medication Aide" (ECF No. 77-2, Gaughan decl., at ¶ 1) employed by Correctional Medical Services, Inc. ("CMS"), a private

3

corporation under contract with the State of Maryland to provide medical services to inmates. She was "neither authorized nor trained to administer any . . . medical or nursing treatment" and "[i]f an inmate asked [her] for any treatment other than medications, [she] would ask the tier officer to call the registered nurse on duty to evaluate the inmate." (ECF No. 77-2 ¶ 4). According to Plaintiff, both Defendant and Officer Stott "ignored" his request for "medical attention" and Defendant "refused to provide [him] with [his] previously prescribed medication." (ECF No. 65 ¶¶ 55, 56).[3]

Officer Logsdon provided Plaintiff with his prescribed medication at approximately 8:00 p.m. (Id. at ¶ 57).[4] Plaintiff again asked Officer Logsdon "to secure medical attention for [his] partially severed fingernail," but the officer "laughed and walked away." (Id. at ¶ 58). Officers Yates, Gover, and Logsdon returned about fifteen minutes later, and Officer Gover "cleaned up the blood on the tier in front of Plaintiff's cell." (Id. at ¶ 60). Once again, Plaintiff requested medical attention and was ignored.

---

[3] Defendant asserts in her declaration that she has no recollection of these events. (ECF No. 77-2 ¶ 3).

[4] In his opposition papers, Plaintiff does not contend that Defendant is liable for the thirty-minute delay in receiving his prescribed medication.

4

At 12:45 the following morning, *i.e.*, approximately five hours after Plaintiff asked Defendant for medical attention, a nurse responded to his "sick-call request." (ECF No. 77-3, Declaration of Dr. Isaias Tessema, at ¶ 3; ECF No. 77-4, medical records, at 01). Plaintiff was taken to the infirmary where the nurse observed "a small avulsed area on the nail of [his] right ring finger" and "slight bleeding and . . . swelling," but also that Plaintiff had "good range of motion" in all fingers and "no crepitus of his fingers or hand." (ECF No. 77-3 ¶ 3). The nurse cleaned the wound, applied antibiotic ointment and a gauze dressing, and gave Plaintiff ibuprofen for pain. (*Id.*).[5]

**II. Standard of Review**

Defendant has moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where, as here, the parties present matters outside of the pleadings and the court considers those matters, the motion is treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b); *Gadsby by Gadsby v.*

---

[5] Although "the fingernail on Plaintiff's right ring finger [eventually] fell off" and Plaintiff "remained in some pain for the next several months" (ECF No. 65 ¶¶ 64, 65), a January 30 follow-up examination by a CMS nurse noted "no redness, swelling, or drainage" and "good range of motion in the finger" (ECF No. 77-3 ¶ 7).

5

*Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 377 (2007); *Emmett*, 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to

confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).

**III. Analysis**

Plaintiff alleges that, by ignoring his request for medical treatment related to his injured finger, Defendant violated his rights under the United States and Maryland Constitutions to be free from cruel and unusual punishment. There is no dispute that, as an employee of CMS, Defendant was a state actor for purposes of § 1983. The Eighth Amendment applies to state actors *via* the Due Process Clause of the Fourteenth Amendment. *See Farmer v. Kavanagh*, 494 F.Supp.2d 345, 353 n.25 (D.Md. 2007) (citing *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991)). Articles 16 and 25 of the Maryland Declaration of Rights are construed *in pari materia* with the Eighth Amendment, *see Brooks v. State*, 104 Md.App. 203, 213 n.2 (1995) (citing *Harris v.*

7

*State*, 312 Md. 225, 237 n.5 (1988)); thus, Plaintiff's claims under those provisions need not be considered separately from his federal constitutional challenge.

It is undisputed that Defendant was not, herself, qualified to render medical assistance to Plaintiff. When an inmate requested such assistance, her role was limited to "ask[ing] the tier officer to call the registered nurse on duty to evaluate the inmate." (ECF No. 77-2 ¶ 4). There is also no dispute that Plaintiff was evaluated and treated by a nurse approximately five hours after he requested Defendant's assistance; indeed, Plaintiff "does not challenge the adequacy of the medical care" provided. (ECF No. 82, at 6-7). Thus, the only substantive claim presented is that Defendant's failure to report his request for medical assistance to "the tier officer" constitutes cruel and unusual punishment in violation of the Eighth Amendment.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its prohibition against cruel and unusual punishment. *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To establish a claim for denial of medical care under the Eighth Amendment, the plaintiff must demonstrate that the actions of the defendant, or the defendant's failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference claims have both an objective and subjective component. *See Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). First, the plaintiff must prove that the medical condition or injury at issue was objectively serious. *Id.; see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle*, 429 U.S. at 105. The plaintiff must also satisfy the subjective component by showing that the defendant acted with deliberate indifference, *i.e.*, that she was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that she, in fact, "dr[e]w the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff cannot establish either component here. A "'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). As Plaintiff's injury had not yet been diagnosed at the time Defendant allegedly ignored his request for medical attention, the relevant inquiry is whether the severity of his injury – later diagnosed as "a small avulsed area on the nail of [his] right ring finger," with some degree of bleeding and swelling (ECF No. 77-3 ¶ 3) – was sufficiently obvious. Courts considering cases involving similar injuries have answered that

9

question in the negative. *See, e.g., Thomas v. Nassau Co. Corr. Ctr.*, 288 F.Supp.2d 333, 338 (E.D.N.Y. 2003) ("an injured hand is not a serious enough condition to satisfy the first prong of the test"); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F.Supp.2d 303, 311 (S.D.N.Y. 2001) ("a cut finger, even where skin is ripped off, . . . does not, as a matter of law, qualify as an injury severe enough to justify civil rights relief").

Plaintiff argues that "[e]xtreme pain may make a medical condition sufficiently serious," adding that "[a]nyone who has ever lost a fingernail due to blunt force trauma knows how painful it is." (ECF No. 82, at 8). Be that as it may, the "serious injury" prong is an objective inquiry, as the cases cited by Plaintiff make clear. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2nd Cir. 1996) ("*Objectively*, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.") (emphasis added; internal marks omitted); *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999) ("[a] condition is *objectively* serious if failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain") (emphasis added; internal marks omitted). In other words, the degree of pain that Plaintiff subjectively experienced, by itself, is not relevant – particularly where, as here, there is no evidence suggesting

that the defendant inflicted the injury or had any knowledge of the manner in which it was inflicted. The subjective perspective that is relevant, moreover, is not that of the plaintiff, but of the defendant. *See Iko*, 535 F.3d at 241 (the defendant must have "actual knowledge of the risk of harm to the inmate" and "recognize[] that [her] actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs").

The subjective component of the deliberate indifference analysis "sets a particularly high bar to recovery," *id*. (citing *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)), and Plaintiff has failed to meet that bar. Even assuming that his injury was objectively serious and that Defendant ignored his request for medical attention, there is nothing in the record suggesting that Defendant had specific knowledge of a risk of harm to Plaintiff. It may be reasonably inferred that there was some amount of blood on the floor in front of Plaintiff's cell at the time Defendant passed by, but it is not enough for Plaintiff to show that Defendant should have noticed the blood and inferred that Plaintiff's injury called for prompt medical attention. *See Iko*, 535 F.3d at 241 ("actual knowledge of the risk of harm to the inmate is required") (citing, *inter alia*, *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officers *should have*

recognized [a substantial risk of harm]; they actually must have perceived the risk.") (emphasis in original)). Unlike his request for treatment from Lieutenant Yates, to whom he "showed . . . [the] bloody finger" (*id.* at ¶ 49), Plaintiff does not suggest that Defendant ever saw his finger or that he told her the nature of his injury. In fact, his claim that Defendant "ignored" his request for "medical attention" (ECF No. 65 ¶ 55) is not inconsistent with Defendant's assertion that she does "not recall [Plaintiff] ever complaining of a broken and bleeding fingernail." (ECF No. 77-2 ¶ 3).

The record further reflects that even if Defendant had recognized that Plaintiff had a serious injury, she could only have "ask[ed] the tier officer to call the registered nurse on duty to evaluate the inmate." (*Id.* at ¶ 4). It is unknown who "the tier officer" was on the night in question, but Plaintiff asserts that five correctional officers on the tier were already aware of his request for medical attention – including Officer Stott, who came on the tier at the same time as Defendant. Thus, it appears doubtful that Defendant's report to "the tier officer" would have done anything to mitigate a risk of harm to Plaintiff.

The Fourth Circuit has recognized that deliberate indifference can be shown where medical treatment is delayed for non-medical reasons, *see Hunt v. Sandhir, M.D.*, 295 Fed.Appx.

584, 586 (4th Cir. 2008) (per curiam) (citing *Monmouth County Corr. v. Lanzaro*, 834 F.3d 326, 346-47 (3rd Cir. 1987)), but Plaintiff has not even suggested a non-medical reason Defendant had for allegedly delaying his treatment. At most, Defendant's failure to report the injury resulted in a delay of approximately five hours. Considering the relatively minor nature of Plaintiff's injury, that time period is too brief to support an Eighth Amendment claim. *Cf. Hunt*, 295 Fed.Appx. at 586 (finding nine-day delay in treating a fractured elbow, based on non-medical reasons, sufficient to support a deliberate indifference claim) (citing *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (failure to treat dental problems for three months); *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086-87 (11th Cir. 1986) (three-day delay in medical treatment for shoulder injury); *Fields v. Gander*, 734 F.2d 1313, 1314 (8th Cir. 1984) (failure to treat an infected tooth causing severe pain for twelve days)). Moreover, it is undisputed that Plaintiff's "sick-call request" was submitted at some point and that a nurse responded and provided adequate treatment, albeit later than Plaintiff preferred. His complaint that he was not treated more promptly sounds in the nature of a disagreement with the prison staff's assessment of the severity of his injury. It is well-settled that such a disagreement does not constitute an Eighth Amendment claim. *See Wright v. Collins*, 766 F.2d 841, 850 (4th

Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.").

In sum, Plaintiff cannot establish, on this record, that Defendant was deliberately indifferent to a serious medical need. Accordingly, Defendant is entitled to summary judgment.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge